Sam Duman and Ida Duman, et al., [1] v. Commissioner. Duman v. Commissioner
Docket Nos. 1126-65, 1127-65, 1129-65, 3143-65, 3145-65. T
United States Tax Court
T.C. Memo 1967-161; 1967 Tax Ct. Memo LEXIS 99; 26 T.C.M. (CCH) 750; T.C.M. (RIA) 67161; August 3, 1967
*99 Percentage Depletion: Mining: Gross Income: Treatment Process. - Section 613(a) and (c)(2) and (4). - The cost of the treatment process to uranium ore to produce uranium oxide, U3O8, is not deducted in determining gross income from mining on which 23 percent depletion is based, where the miner owned the ore and the U3O8 or yellow cake until the processor bought the U3O8 from the miner after the processing had been completed. Richard R. Helmick, for the petitioners. Arthur B. Bleecher, for the Commissioner. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income tax as follows: Docket
No.
Petitioner
Year
Deficiency
1126-65
Sam Duman and Ida Duman
1961
$18,297.74
3145-65
1962
1,169.02
1127-65
Hyman I. Waldbaum and Ann Waldbaum
1961
18,005.06
3143-65
1962
1,296.46
1129-65
Morey S. Duman and Shirley M. Duman
1961
20,541.02
3144-65
1962
769.65
The only issue for decision in each case is whether the Commissioner erred in reducing gross income from mining by milling costs before allowing 23 percent thereof as percentage depletion based upon the petitioners' income from their interests in ore from the Schwartzwalder Mine. All other differences have been settled by stipulation. Findings of Fact The petitioners *101 at each docket number are a husband and wife who resided in Denver, Colorado and filed joint returns for each year with the director of internal revenue for the Denver, Colorado district. The petitioners, during 1961 and 1962, through D & W Investment Company, a partnership, were members of a group of investors, known as the Schwartzwalder Group, who owned a 2,0737475 percent mineral interest in and operated a uranium mine known as the Schwartzwalder Mine located near Golden, Colorado. The mine was operated for the Schwartzwalder Group by Denver-Golden Corporation, formerly Denver-Golden Oil & Uranium Company, under an Operating Agreement. The ore taken from that mine contained a high percentage of uranium oxide, U3O8, a chemical substance which could be obtained by a process to which the mined ore could be subjected. Crude uranium ore extracted from the Schwartzwalder Mine by Denver-Golden Corporation was delivered by it, as agent for the Schwartzwalder Group to the processing mill near Canon City, Colorado, owned and operated by Cotter Corporation. The crude ore was there processed, pursuant to a custom milling agreement called the Ore Processing Contract dated April 15, 1958, between *102 the Schartzwalder Group and Cotter Corporation, into a chemical product commonly known as yellow cake or U3O8. Cotter operated under an agreement with the United States Atomic Energy Commission dated December 17, 1959, in evidence as exhibit AF. The Ore Processing Contract between Denver-Golden and Cotter Corporation dated April 15, 1958 recited; inter alia, that the Schwartzwalder Group desired to deliver uranium ore to the Cotter mill for processing to produce "yellow cake" which the Group would sell to Cotter. It also recited that Cotter desired to receive and process the uranium ore and to purchase the yellow cake thus produced. That agreement required the Group to maintain a stockpile of ore at the Cotter mill of "minimum average grade of.80% U3O8" and required Cotter to buy all of the U3O8 produced from the Group's ore processed by Cotter and pay monthly "on the basis of $7.10 per pound for 88% of the U3O8 contained in the ore regardless of the actual percent of recovery obtained", less a processing charge, and after April 1, 1962 Cotter was to pay the prevailing market price for the yellow cake. Cotter was entitled to make and receive a processing charge as provided in *103 Schedule 2 attached to the contract. None of the Schwartzwalder Group owned any interest in Cotter. Cotter could and did mix ores of different owners to produce a proper blend each time it fed ores into its mill and ownership of the resulting yellow cake was determined upon the quantity of ore and the predetermined U3O8 content of the ore used in each mix. Cotter by contract or waiver was to own the residue of ore remaining after the U3O8 had been removed from it and paid for by Cotter. This may have been more of a liability than an asset to Cotter. The ore delivered by the Schwartzwalder Group to Cotter was never owned by Cotter at any time before or during the processing into yellow cake and Cotter did not own that resulting yellow cake until it purchased it from the Schwartzwalder Group. This arrangement was not only not in violation of any requirement of the Atomic Energy Commission, but was known to and approved by the Commission. The ore and yellow cake were at the risk of the Schwartzwalder Group while owned by that Group. The sale and handling of uranium ore and U3O8 was, at all times material hereto, subject to the exclusive control of the Atomic Energy Commission, *104 either by law or as a practical matter of market availability. Percentage depletion at the rate of 23 percent of the "gross income from the property" is allowable to the Schwartzwalder Group in the present case. The milling costs involved herein are included within the scope of section 613(c)(4)(D) of the Internal Revenue Code of 1954, as amended. The total dollar amounts of milling costs involved, relating to the entire Schwartzwalder Group, are $496,573.92 and $308,953.86, respectively, for the taxable years 1961 and 1962. The Schwartzwalder Group placed a substantial stockpile of raw ore for the convenience of Cotter Corporation at the Cotter mill at no cost to Cotter, pursuant to the requirements of the Ore Processing Contract. The Schwartzwalder Group received payment for their ore only after the ore had been processed into yellow cake and the cake sold to the Atomic Energy Commission by Cotter Corporation. The Atomic Energy Commission knew of and approved the Ore Processing Contract between the Schwartzwalder Group and Cotter Corporation. During the tax years 1961 and 1962, the Schwartzwalder Group did not hold a license or contract from the *105 Atomic Energy Commission to process uranium ore into yellow cake or to sell yellow cake to the Atomic Energy Commission. All stipulated facts and exhibits are incorporated herein by this reference. Opinion MURDOCK, Judge: Percentage depletion, which is in issue here, is based on a percentage of the gross income from the property, which in turn is defined as the gross income from mining. Mining is then defined as including the ordinary treatment processes or other processes set forth in the Code. There is no dispute in this case as to the treatment processes themselves. The Commissioner acknowledges that the treatment processes involved in this case come within the Code definition of the term "mining". The pertinent provisions of the Code include the following: SEC. 613. PERCENTAGE DEPLETION. (a) General Rule. - In the case of the mines, wells, and other natural deposits listed in subsection (b), the allowance for depletion under section 611 shall be the percentage, specified in subsection (b), of the gross income from the property excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. *106 * * *
(c) Definition of Gross Income From Property. - For purposes of this section - * * *
(2) Mining. - The term "mining" includes not merely the extraction of the ores or minerals from the ground but also the treatment processes considered as mining described in paragraph (4) (and the treatment processes necessary or incidental thereto), * * *. * * *
(4) Treatment Processes Considered as Mining. - The following treatment processes where applied by the mine owner or operator shall be considered as mining to the extent they are applied to the ore or mineral in respect of which he is entitled to a deduction for depletion under section 611: * * *
(D) in the case of * * * uranium * * * ores or minerals which are not customarily sold in the form of the crude mineral product - crushing, grinding, and benefication by concentration (gravity, flotation, amalgamation, electrostatic, or magnetic), cyanidation, leaching, crystallization, precipitation * * * or by substantially equivalent processes or combination of processes used in the separation or extraction of the product or products from the ore or the mineral or minerals from other material from the mine or other *107 natural deposit; The Commissioner "views the contractual arrangements between the Schwartzwalder Group - which includes the petitioner - to be a stratagem having as its only genuine purpose a tax-saving motive without any bona fide business or financial purpose". He also argues that since none of those in the Schwartzwalder Group owned any interest in or leased Cotter, the processor of the ore, that treatment process was not applied by the mine owner or operator within the meaning of section 613(c)(4)(D) and may not be considered as mining by the Schwartzwalder Group. The petitioners contend that the treatment process or milling in which yellow cake, U3O8, was obtained from the ore, was applied on their behalf and paid for by them so that as mine owners or operators this was a step in their mining process within the meaning of section 613(c)(2) and (4)(D). They quote from the Conference Committee report on section 613(c)(4): Specifically included treatment processes. - The new paragraph (4) of Section 613(c) describes (in Subpars. (A) to (H), inclusive, treatment processes which are to be considered as mining, where applied by the mine owner or operator, to the extent such processes *108 are applied to the ore or mineral in respect of which the mine owner or operator is entitled to a deduction for depletion under Section 611 of the 1954 Code. As under existing law, a described process is to be treated as mining where performed by another person for the mine owner or operator if the mine owner or operator has not disposed of his depletable interest in the ore or mineral to which such process is applied. Under the language of this provision, a described process is not treated as mining where applied to a purchased ore or mineral. The stockpiling provision of the Ore Processing Contract and the delayed payment provisions would appear to be far more beneficial to Cotter than an outright purchase of ore would have been. Ownership of the ore and yellow cake by the Schwartzwalder Group relieved Cotter of risks incident to ownership. It is apparent from these and other effects of that contract that it was not "a stratagem having as its only genuine purpose a tax-saving motive without any bona fide business or financial purpose". There is no sufficient reason here to disregard it. The whole atomic energy field was relatively new when the events pertinent hereto took place. *109 The Commissioner recognizes that the Denver-Golden Oil and Uranium Company mined the ore on behalf of the entire Schwartzwalder Group and that the Group qualifies as miners of the ore entitled to the 23 percent depletion deduction. It seems no more difficult to regard the Cotter Corporation's processing as done on behalf of the owners of the ore throughout that process so that this too was a part of the Group's mining within the meaning of section 613(c)(2) and (4)(D). The processing costs should not be deducted in computing the petitioners' gross income from the property on which the 23 percent depletion deduction is computed. Decisions will be entered under Rule 50. Footnotes
1. Cases of the following petitioners are consolidated herewith: Hyman I. Waldbaum and Ann Waldbaum, Docket No. 1127-65; Morey S. Duman and Shirley M. Duman, Docket No. 1129-65; Hyman I. Waldbaum and Ann Waldbaum, Docket No. 3143-65; Morey S. Duman and Shirley M. Duman, Docket No. 3144-65; and Sam Duman and Ida Duman, Docket No. 3145-65.↩